# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LaTausha Simmons

              Plaintiff,

v.

Case: 5:19-cv-11726
Judge: Levy, Judith E.
MJ: Majzoub, Mona K.
Filed: 06-10-2019 At 04:07 PM
CMP SIMMONS v CITY OF SOUTHFIELD, ET AL (dat)

City of Southfield, a municipal corporation,
Southfield Police Department, Police Chief Joseph Thomas, Jr.,
Officer K. Miller, Officer A. Sharp,
Ross Towing, a domestic corporation police-authorized tower,
City of Detroit, a municipal corporation,
Detroit Police Department, Police Chief James Craig,
Officer A. Carr, Officer Doso P. Thomas, Lieutenant Duncan,
Sergeant Williams, Detective Cross Nelson,
Ms. Curry, civilian employee of the Detroit Police CAT Unit, and
other unknown Officers of the Detroit Police CAT Unit,
Individually, and in their Official Capacities
Jointly and Severally,

                                     **Verified Complaint**

              Defendants.

---

LaTausha Simmons
Plaintiff, Pro Se
20500 Dean
Detroit, MI 48234

---

## COMPLAINT, MOTION FOR CLAIM AND DELIVERY, TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, DECLARATORY RELIEF, EQUITABLE RELIEF AND JURY DEMAND PURSUANT TO 42 U.S.C § 1983, Fed. R. Civ. P 65, MCL 600.2920, MCR 3.105 MCL 257.252 AND 32 C.F.R§ 634.51(b)

**NOW COMES,** Plaintiff, LaTausha Simmons, Pro Se and files her cause of action and moves for

claim and delivery, temporary restraining order, injunctive, equitable and declaratory relief against the

above named Defendants pursuant to *42 U.S.C § § § 1983, 1985, and 1988, and Fourteenth Amendment*

*to the United States Constitution, Municipal Liability Under 42 U.S.C. § 1983, Fed. R. Civ. P 65, MCR*

*3.105, MCL 600.2920, MCL 257.252, 32 C.F.R§ 634.51(b),* vicarious liability, and under the statutory

and common law of the State of Michigan and consequently, Plaintiff has a viable claim for damages under 42 U.S.C 1983 for the injuries sustained, are sustaining, or will sustain as a result of the events described herein, and hereby states as follows:

> Under Michigan Law, civil action for claim and delivery may be brought to recover possession of any goods or chattel that have been unlawfully taken or unlawfully detained and to recover damages attendant to the unlawful taking or detention.

> No **state** shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unite **States**; nor shall any **state** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

> When requesting an injunction, state officials can be sued in their official capacities. *Will v. Michigan Department of State Police 491 U.S. 58 (1989)*. This is because injunctions are not barred by the 11th Amendment. A state official in his or her official capacity, when sued for injunctive relief, would be a person under 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham, 473 U.S., at 167, n. 14; Ex parte Young, 209 U.S. 123, 159 -160 (1908)*.

## INTRODUCTION

This case is brought to redress the constitutional violations, deprivation, unlawful taking and/or detention of Plaintiff's property; damages sustained by the unlawful taking and/or unlawful detention; losses and injuries of Plaintiff stemming from the actions, inactions and misconduct of Defendants. Plaintiff was a victim of a robbery of her vehicle key and subsequent theft of her vehicle. Defendants Detroit Police Department officers while at the scene of the crime refused to investigate nor make a police report of the robbery of Plaintiff's vehicle key and theft of her vehicle and the fact that Plaintiff had been followed to her location by the perpetrators for the crime to occur and that Plaintiff had been at the location for hours prior to the theft of the key and subsequent theft of the vehicle. Defendants Detroit police officers had Plaintiff appear at the Defendants' location to fill out and sign an affidavit prior to even taking the auto theft report and entering it into the and without consent Officer Thomas altered and changed Plaintiff's written statements and information provided on her signed affidavit; several hours later forced Plaintiff to wait over 4 hours before entering the auto theft report into the Detroit Police Department's system; intentionally communicated inaccurate, false and misleading information to other departmental units regarding the robbery and theft; had that false and misleading information documented in the system and subsequently on the police report; refused to assign a detective or investigator to the case; refused to investigate the case altogether; refused to allow Plaintiff to appear at the Auto theft unit to speak directly with detectives face to face; provided false and misleading information to Plaintiff as to

2

the assignment of a detective to her case on multiple occasions; provided impatient, hostile, rude and unprofessional assistance to Plaintiff during telephone communications with Commercial Auto Theft Unit regarding her case; threatened to hang up on Plaintiff for wanting to provide her report number when she contacted the Detroit Police Commercial Auto Theft Unit; hung up on Plaintiff numerous times when she contacted Commercial auto theft unit; provided false and misleading information that there were no surveillance video of the theft of Plaintiff's vehicle when police never even attempted to retrieve or access the city's own surveillance cameras nor communicate with nearby businesses in the area where the theft occurred for possible surveillance video; never followed up on the information Plaintiff provided directly to the auto theft unit and police headquarters regarding actual video of the theft from a local business; never even attempted to contact Plaintiff by any means whatsoever regarding her stolen vehicle. Plaintiff's vehicle was recovered over 30 days later, on June 2, 2019, by Southfield Police on Northwestern Hwy, some 20 miles away from where it was stolen and the vehicle was ordered by Southfield Police to towed by Ross Towing, in Southfield, wherein Plaintiff appeared the following day on June 3, 2019 to pick up her vehicle. Plaintiff obtained a vehicle release from the Southfield Police Department and provided it to Ross Towing along with funds to cover the costs of towing and storage. Ross Towing refused to release the vehicle unless Plaintiff sign away and waive all of her rights to damages to her vehicle, refused Plaintiff the right to inspect the interior of the vehicle, refused to address Plaintiff's inquiry into the severe damages to her vehicle, her missing property from the vehicle and the perpetrator(s) property inside of the vehicle, threw Plaintiff's money back at her, threw Plaintiff's documents at her and then threatened Plaintiff with arrest for trespassing although Plaintiff's was rightfully and lawfully on the premises. Plaintiff requested assistance from Southfield police for the release of her vehicle, for police to document the damages to her vehicle, her missing property and for police to retrieve the perpetrator's property from the vehicle. Southfield Police threatened Plaintiff that she better sign her name and only her name on the document that Ross Towing provides to her and that she better not put anything else on the document or she will not get her vehicle back and then threatened Plaintiff with arrest and jail for trespassing, in spite of Plaintiff being rightfully and lawfully on the premises. Plaintiff obtained the officers' names and attempted to obtain the name of the employee of Ross Towing, however he provided his first and last name as "Ross Towing" thereafter Plaintiff left without her vehicle. On June 4, 2019 Plaintiff contacted Detroit Police commerical auto theft unit to inquiry about the overall investigation into the theft, recovery of the vehicle, her missing property, the retrieval of the perpetrator(s) property from the vehicle and release of her vehicle from Ross Towing. Plaintiff spoke with Detective Cross-Nelson over the phone, who was hostile, angry, impatient when speaking to Plaintiff and threatened to hang up on her when Plaintiff attempted to provide her report number, as he claimed that auto thefts in Detroit will never be assigned to a detective unless there is video that the detectives can obtain, he subsequently followed up on his threat and hung up on Plaintiff. On June 5, 2019, Plaintiff contacted the commercial auto theft unit and police headquarters via telephone and appeared in person at the commercial auto theft unit on Sherwood in Detroit to inquiry about the investigation into the auto theft, recovery of the vehicle, missing property and the retrieval of the perpetrator(s) property from the vehicle and the release of her vehicle. Plaintiff was approached with anger, impatience, hostility, and unprofessionalism by the civilian employee who refused to allow Plaintiff to speak with any officer in that unit and who intentionally provided false and misleading information to Plaintiff stating Detective Cross-Nelson left this civilian employee with information that there was no video of the theft of Plaintiff's vehicle and that he checked with local businesses and the city's camera, (*this false and misleading statement was completely contrary to Plaintiff's conversation with Detective Cross-Nelson just one day prior*). At the filing of this action Plaintiff continues to be deprived of her property which is her vehicle. Based on information and belief, Defendant Ross Towing still hold the vehicle at Ross Towing in Southfield. Plaintiff is filing this action for unjust enrichment, claim and delivery, temporary restraining order, injunctive and declaratory relief, the threats and actions

3

constituting assault and battery, negligence, intentional infliction of emotional distress, violation of her constitutional rights against the above named Defendants pursuant to *42 U.S.C § § § 1983, 1985, and 1988, and Fourteenth Amendment to the United States Constitution, Municipal Liability Under 42 U.S.C. § 1983, Fed. R. Civ. P 65, MCR 3.105, MCL 600.2920* and under the statutory and common law of the State of Michigan.

## JURISDICTION AND VENUE

1. Jurisdiction is founded upon 28 USC Section 1331, Section 1343, and Section 1367, upon supplemental and/or pendent jurisdiction of this Court to adjudicate claims under Michigan law.

2. Venue is proper under 28 U.S.C Section 1391, because all of the acts or omissions complained of herein occurred within this District. This matter arises under the constitutions and laws of the United States and the State of Michigan. The amount in controversy is also in excess of Seventy-Five Thousand Dollars ($75,000.00).

## PARTIES

3. That all times relevant hereto, Plaintiff LaTausha Simmons is a resident of this District.

4. At all times relevant, LaTausha Simmons had a constitutionally protected right, privileges and immunities afforded to her under the United States Constitution and all Federal Statutes.

5. That all times pertinent hereto, Defendant, City of Southfield is a municipal corporation chartered under the laws of the State of Michigan, located in the County of Oakland, State of Michigan, and principal place of business is in this District under Color of Law and is recognized as an entity that can be sued for constitutional violations under 42 U.S.C. Section 1983. Defendant Southfield Police Department is a subdivision of the City of Southfield and upon information and belief, is subject to the same theories of liability.

6. Defendant Southfield Police Chief Joseph Thomas, Jr., was at all times relevant herein, employed as a police chief for the City of Southfield and was acting under Color of State Law and within the course and scope of his employment with Defendant City of Southfield. He is being sued in his individual, as well as his official capacity.

4

7. Defendant Officer K. Miller was at all times relevant herein employed as a police officer for the City of Southfield and was acting under Color of State Law and within the course and scope of his employment with Defendant City of Southfield. He is being sued in his individual, as well as his official capacity.

8. Defendant Officer A. Sharp was at all times relevant herein employed as a police officer for the City of Southfield and was acting under Color of State Law and within the course and scope of his employment with the Defendant City of Southfield. He is being sued in his individual, as well as his official capacity.

9. The Defendants are not entitled to qualified immunity.

10. Defendant Ross Towing was at all times relevant herein, a domestic corporation and authorized tower for police-authorized tows for Defendant City of Southfield and was acting under Color of State Law and acting within the course and scope of their business with the Defendant City of Southfield. They are being sued in their individual, official capacity and for vicarious liability.

11. Defendants City of Detroit, is a municipal corporation chartered under the laws of the State of Michigan, located in the County of Wayne, State of Michigan, and principal place of business is in this District under Color of Law and is recognized as an entity that can be sued for constitutional violations under 42 U.S.C. Section 1983. Defendant Detroit Police Department is a subdivision of the City of Detroit and upon information and belief, is subject to the same theories of liability.

12. Defendant James Craig, Chief of Police, at all times relevant herein, was a resident of this District and employed as police chief for the City of Detroit and was acting under Color of State Law and within the course and scope of his employment with the Defendant City of Detroit. He is being sued in his individual, as well as his official capacity.

13. Defendant Officer A. Carr was at all times relevant herein employed as a police officer for the City of Detroit and was acting under Color of State Law and within the course and scope of his

employment with the Defendant City of Detroit. He is being sued in his individual, as well as his official capacity.

14. Defendant Officer Doso P. Thomas was at all times relevant herein employed as a police officer for the City of Detroit and was acting under Color of State Law and within the course and scope of her employment with the Defendant City of Detroit. She is being sued in his individual, as well as her official capacity.

15. Defendant Lieutenant Duncan was at all times relevant herein employed as a lieutenant for the City of Detroit and was acting under Color of State Law and within the course and scope of his employment with the Defendant City of Detroit. He is being sued in his individual, as well as his official capacity.

16. Defendant Sergeant Williams was at all times relevant herein employed as a sergeant for the City of Detroit and was acting under Color of State Law and within the course and scope of his employment with the Defendant City of Detroit. He is being sued in his individual, as well as his official capacity.

17. Defendant Detective Cross Nelson was at all times relevant herein employed as a detective for the City of Detroit and was acting under Color of State Law and within the course and scope of his employment with the Defendant City of Detroit. He is being sued in his individual, as well as his official capacity.

18. Defendant Ms. Curry was at all times relevant herein employed as a civilian for the City of Detroit Detroit Police CAT Unit and was acting under Color of State Law and within the course and scope of her employment with the Defendant City of Detroit. She is being sued in her individual, as well as her official capacity.

19. Defendants other unknown Officers of the Detroit Police CAT Unit were at all times relevant herein employed officer for the City of Detroit and was acting under Color of State Law and

6

within the course and scope of their employment with the Defendant City of Detroit. They are being sued in their individual, as well as their official capacity.

20. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), not including interest, costs and attorney fees.

21. Defendants are not entitled to qualified immunity.

22. Defendants City of Southfield, City of Detroit and Ross Towing are liable under state and/or federal law for all injuries proximately caused by:

Intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to custom, policies, usage and/or practices which deprive citizens of their property, rights, and privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

## COMMON ALLEGATIONS

### M.C.L.A. 257.252

257.252. Report of vehicle theft through law enforcement information network; report of recovery

Sec. 252. A police agency, upon receiving reliable information that any vehicle registered under this act has been stolen, shall immediately report the theft through the law enforcement information network. Upon receiving information that a vehicle previously reported as stolen has been recovered, the police agency shall immediately report the fact of the recovery through the law enforcement information network.

23. On April 30, 2019, midafternoon, Plaintiff while at the University of Detroit Mercy in Downtown Detroit for approximately 2-3 ½ hours was robbed of her vehicle key and subsequently of her vehicle by unknown perpetrators.

24. Plaintiff unknowingly had been followed to the university by the unknown perpetrator(s). That the perpetrator(s) knew Plaintiff's exact whereabouts, belongings and details about her, and working in concert with each other, located Plaintiff where she was sitting inside

7

of the library, waited until Plaintiff walked away from her belongings and within 5 minutes or less went into Plaintiff's jacket pocket removed the vehicle key from her key ring containing several keys, placed the remaining keys back into Plaintiff's pocket, walked out of the university, down a ramp, across E. Larned street, passed the parking lot, then to E. Congress street where Plaintiff's vehicle was parked among 20 or more vehicle in direct line of site from the nearby gas station, with no way of identifying Plaintiff's vehicle from all others and eventually stole Plaintiff's vehicle.

25. Upon information provided to Plaintiff the theft of her vehicle was captured on surveillance video from one of the near by business.

26. That between the hours of 4:30pm and 5:00pm when Plaintiff noticed that her vehicle was missing and that there was no broken glass near the vehicle after walking outside of the university to the nearby gas station, Plaintiff immediately called 911 to report it, however, 911 refused to take the theft of the vehicle over the phone and stated that they will have someone come out.

27. Plaintiff noticed several minutes after hanging up with 911, that her key to the vehicle was missing.

28. Defendant Officer A. Carr arrived at the nearby gas station where Plaintiff was waiting for police and Plaintiff reported the robbery of the key from the university and the theft of her vehicle from E. Congress and provide the registration of the vehicle to the Defendant Officer Carr.

29. Defendant Detroit Police Officer A. Carr refused to take a report of the robbery/theft of the vehicle key from the university, refused to take a report of the theft of the vehicle and even

refused to input any of the information regarding the robbery and theft into the Detroit Police Department's system.

M.C.L.A. Michigan Vehicle Code 257.252.

257.252. Report of vehicle theft through law enforcement information network; report of recovery

Sec. 252. A police agency, upon receiving reliable information that any vehicle registered under this act has been stolen, shall immediately report the theft through the law enforcement information network. Upon receiving information that a vehicle previously reported as stolen has been recovered, the police agency shall immediately report the fact of the recovery through the law enforcement information network.

30. Defendant Police Officer A. Carr told Plaintiff that she had to appear in person to report the robbery of the key and theft of the vehicle.

31. Plaintiff appeared at Downtown services, where Defendant unknown Detroit Police Officer told Plaintiff that before the report of the robbery of her key and theft of her vehicle could be completed Plaintiff had to fill out and sign an affidavit.

32. Plaintiff completed the affidavit and provided that information to Defendant unknown police officer to complete an auto theft police report and that unknown officer provided the affidavit to Defendant Officer Doso P. Thomas.

33. Defendant Doso P. Thomas refused to make the police report after Plaintiff had waited for over an hour or more after arriving and although Plaintiff provided to Defendant Doso P. Thomas the current registration to the vehicle.

34. Defendant Doso P. Thomas and unknown police officer told Plaintiff that since Plaintiff's identification was located inside of the stolen vehicle, the police report for the robbery and theft of her vehicle will not be completed nor entered into the Detroit Police Department's system as a stolen vehicle unless Plaintiff provide her Sam's Club card, Costco card or school ID

9

and Defendants had Plaintiff leave to obtain some other form of ID to provide with her current vehicle registration causing over 4 to 5 hours or more to lapse before the vehicle will be entered into the Defendant's Detroit Police Department's system as stolen.

35. Defendant Officer Doso P. Thomas altered, changed and edited Plaintiff's affidavit without Plaintiff's consent and ignored Plaintiff's objection to her changes and edits and intentionally documented false, misleading, inaccurate and incorrect information regarding the theft of the vehicle, contrary to Plaintiff's statements.

36. Defendant Officer Doso P. Thomas intentionally communicated verbally to other departmental unit(s) false, misleading, inaccurate, and incorrect information and statements misconstruing and downgrading the nature of the theft and facts surrounding the robbery of Plaintiff's vehicle key and the theft of the vehicle, in particular that Plaintiff had in her possession the key to the vehicle, and had the same documented on the police report.

37. Plaintiff was told to contact Defendant's third precinct investigation department the following day regarding her stolen vehicle.

38. On May 1, 2019 approximately 2:52 am Plaintiff appeared at Defendant's third precinct to receive assistance with her stolen vehicle, however, Defendant's Officer Witcher was rude, hostile, angry, aggressive and refused Plaintiff any assistance whatsoever regarding her stolen vehicle.

39. On May 1, 2019 approximately 8:30 am, Plaintiff via phone contacted Defendant's third precinct and was informed that the theft of her vehicle was assigned to the Defendant Detroit Police Department Commercial Auto Theft Unit and to contact that unit after 9 a.m.

40. Plaintiff contacted that commercial auto theft unit and spoke with a Detective Robinson and explained the details and nature of the robbery/theft of her vehicle and was told that her vehicle was not assigned to a detective yet, and the detective informed Plaintiff that the police report indicated that

10

Plaintiff was in possession of her key to the vehicle and that information downgraded the nature of the theft and for Plaintiff to have that information corrected.

41. Plaintiff contacted Defendant Detroit Police Department's Downtown Services' Lieutenant I. Lewis to have the the police reported corrected.

42. Plaintiff continued to follow up with the Defendant Detroit Police Department's commmmercial auto theft unit every other day, however received no assistance, was told that she cannot not come to the location to speak with a detective face to face, and received no information as to her vehicle, surveillance video, nor which detective was assigned to her case.

43. Plaintiff after a week of contacting the commercial auto theft unit, was told by a Sergeant Williams of the Defendant's commercial auto theft unit that Defendant Detective Cross-Nelson was the detective assigned to the case.

44. Plaintiff continued to call the commercial auto theft unit to speak with Defendant Detective Cross-Nelson, however to no avail and was meet with hostility, anger, impatience, rudeness and unprofessionalism by Defendant Ms. Curry, who yelled, screamed, threatened to hang up the call, refused to provide any assistance, refused to transfer the call to a supervisor over detective Cross-Nelson and who hung up on Plaintiff multiple times, Defendant Ms. Curry misconduct persisted with each contact Plaintiff made with the Defendant Detroit Police commercial auto theft unit.

45. On or about May 9, 2019, Plaintiff contacted Defendant Police Department Headquarters to get assistance due to the misconduct, unprofessional behavior and lack of assistance Plaintiff received from the commercial auto theft unit and spoke to Officer Lance who stated that she works out of the Chief of Police's office.

46. Officer Lance stated that she made contact with the commercial auto theft unit about Plaintiff's stolen vehicle and to give her a call back the next day to follow up with her and that if she does

11

not answer the phone she may have stepped away to use the restroom because she is pregnant and has to use the restroom frequently, however to ask for her by name.

47. Plaintiff contacted the Defendant Detroit Police Department the next day as instructed and requested to speak with Officer Lance and provided a description of her as instructed, and was told that she was not available, Plaintiff then requested to speak with a supervisor in the chief of police office, however to no avail.

48. Defendant Detroit Police Department's unknown officer, upon Plaintiff explaining the matter to her, placed Plaintiff on hold multiple times, over and over again, and provide absolutely no assistance to Plaintiff, and hung up on Plaintiff.

49. Plaintiff contacted Defendant Detroit Police Department Headquarters multiple times and the Defendant's commercial auto theft unit multiple times for assistance with the robbery of her vehicle key and for assistance with her stolen vehicle, and received no assistance.

50. On May 14, 2019, Plaintiff again contacted the Defendants Commercial auto theft unit and spoke with a Detective Leonard and was informed by the detective that no detective had been assigned to her stolen vehicle case, after two weeks of reporting the vehicle stolen.

51. Defendant Detroit Police Department had not assigned any detective to Plaintiff case after two weeks after the vehicle being stolen.

52. Plaintiff again contacted Defendant Detroit Police Department Headquarters multiple times and the Defendant's commercial auto theft unit multiple times for assistance with the robbery of her vehicle key and for assistance with her stolen vehicle, and received no assistance.

53. Defendants Detroit Police Department never called or even attempted to contact Plaintiff regarding the robbery of her vehicle key and her stolen vehicle and upon information and belief Plaintiff's stolen vehicle case had never been assigned to any detective with the Detroit Police Department.

12

54. On June 2, 2019 Plaintiff's stolen vehicle was recovery by Southfield Police, on Northwestern Hwy, in Southfield, Michigan, 20 miles away from where it was stolen and ordered to be towed by Defendant Ross Towing an authorized-police tower for Southfield police.

55. On June 2, 2019, Defendant Detroit Police Department contacted Plaintiff via telephone and left a message that indicated that her stolen vehicle had been recovered intact and provided a phone number for Plaintiff to get in contact with the auto theft recovery unit.

56. On June 3, 2019, Plaintiff contact the Defendant Detroit Police Department to ascertain the condition of the vehicle, contact information and location of the vehicle and any other information about the vehicle.

57. Defendant Detroit Police Department provided Plaintiff with the contact information of Defendant Ross Towing and stated that the vehicle was recovered in the 27000 block of Northwestern Hwy, by Southfield Police.

58. Plaintiff appeared in person at Ross Towing once received the information provided by Defendant Detroit Police Deaprtment.

59. Defendant Southfield Police Department never investigated the stolen vehicle, damages to the vehicle, missing property from the vehicle, if they searched the vehicle, fingerprints from the vehicle, how the vehicle arrived at the location without a key, where the perpetrator(s) may have gone after abandoning the vehicle wherein the distance of the businesses are far and few in between and the stretch of the highway and exits to a local road are the same, if the perpetrator(s) were inside of a nearby business, how the perpetrator(s) left the scene from where they abandoned the vehicle, and if any of the nearby businesses had surveillance video of the perpetrators, and so forth.

60. Plaintiff appeared in person at Defendant Ross Towing's location at 21360 Telegraph Rd, in Southfield, Michigan and informed the attendant that she was there to pick up her vehicle. Plaintiff requested to see the vehicle, however was told that she can not see the vehicle at all, until she receives a

13

vehicle release from the Southfield Police Department and was told that it will be $140.00 in order to get the vehicle back from Defendant Ross Towing.

61. Plaintiff appeared at the Defendant Southfield Police Department obtained a release of the vehicle and return to Defendant Ross Towing to pick up the vehicle and requested to see her vehicle.

62. Defendant Ross Towing told Plaintiff that she could only view the exterior of the vehicle and that she cannot inspect or go inside of the vehicle at all.

63. Plaintiff upon inspection of the vehicle, she noticed several several damages to the vehicle that consisted of a broken headlight, completely missing passenger sideview mirror and severe deep gashes and scratches to the lower portion of the passenger rear door, and that the damages were inconsistence with and independent of each other, that her property was missing from the vehicle and the perpetrator(s) property was inside of the vehicle and returned to the office of Defendant Ross Towing to inquire about the damages, missing property and perpetrator(s)' property.

64. Defendant Ross Towing refused to address Plaintiff's inquiries.

65. Plaintiff provided full payment for storage and towing costs for the release of her vehicle, the release from the Southfield Police Department and current registration to the vehicle.

66. Defendant Ross Towing gave Plaintiff documents to sign showing Plaintiff paid in full the costs for towing and storage, however one of the documents required Plaintiff to waive all of her rights to recover for damages to her vehicle.

67. Upon Plaintiff's inquiry into the document, Defendant Ross Towing refused to explain the document.

68. Therefore, Plaintiff notated on the documents that Plaintiff preserves all of her rights and that Plaintiff does not waive any of her rights, that Plaintiff's property is missing from the vehicle and that the perpetrator(s)' property remains in the vehicle.

14

69. Defendant Ross Towing became upset, rude, angry, hostile, aggressive, agitated, and unprofessional and refused to assist Plaintiff any further and walked away telling Plaintiff that he is not accepting the documents and walked away and started watching television.

70. Defendant Ross Towing refused to release the vehicle unless Plaintiff signed away and waived all of her rights to damages to her vehicle, refused to address Plaintiff's inquiry into the severe damages to her vehicle, her missing property from the vehicle and the perpetrator(s) property inside of the vehicle and threw Plaintiff's money back at her, threw Plaintiff's documents at her, came from behind the counter after Plaintiff, held the door open and yelled at Plaintiff to get out and told Plaintiff that she is not getting her vehicle back, and then threatened Plaintiff with arrest for trespassing although Plaintiff's was rightfully and lawfully on the premises.

71. Defendant Ross Towing's misconduct, acts, actions, behavior of angrily, aggressively filled with hostility, aggressive yelling at Plaintiff, the act of throwing and shoving Plaintiff's money and documents at her,coming from behind the counter after Plaintiff, holding the door open yelling at Plaintiff to get out, telling Plaintiff that she is not getting her vehicle back, and threatening Plaintiff with arrest for trespassing placed Plaintiff in extreme fear after being assaulted and battered with her documents and other documents, placed Plaintiff in fear of being physically assaulted and battered by Defendant Ross Towing's attendant physical approach, extreme fear of being arrested when all she was doing was following the proper procedures to receive her vehicle back after it had been stolen, and extreme fear for exercising her rights to not sign a document waiving her rights and to preserve her for the damages to her vehicle, to document her missing property and to document that there was property inside of her vehicle that belonged to the perpetrator(s), constitutes a clear violation of Plaintiff's constitutional rights to her property and assault and battery against Plaintiff by Defendant Ross Towing who is vicariously liable for their employee and from violating Plaintiff's constitutional rights to her property, as set forth herein.

15

72. Plaintiff requested assistance from Defendant Southfield police for the release of her vehicle, for police to document the damages to her vehicle, her missing property and for police to retrieve the perpetrator's property from the vehicle and called 911 for the threats by Defendant Ross Towing.

73. Defendant Southfield Police Officers K. Miller and A. Sharp arrived and Plaintiff explained that she has received a release from the Southfield Police for the release of her vehicle from Ross Towing, that she has presented to Defendant Ross Towing, with full payment and registration of the vehicle, that she request that the damages to her vehicle be documented, that her missing property be documented, for the perpetrator's property to be removed from the vehicle by police and that Defendant Ross Towing refused to release her vehicle unless she signs and waives all of her rights to the damage to her vehicle.

74. Defendant Southfield Police Officer K. Miller as Officer A. Sharp stood by without saying nothing while Officer K. Miller threatened Plaintiff that she better sign her name and only her name on the document that Ross Towing is going to provide to her again and that she better not put anything else on the document or she will not get her vehicle back and then threatened Plaintiff with arrest and jail for trespassing, in spite of Plaintiff being rightfully and lawfully on the premises.

75. Plaintiff obtained the officers' names and attempted to obtain the name of the attendant/employee of Ross Towing, however he provided his first and last name as "Ross Towing" Plaintiff asked him again for his name, he again stated he name was "Ross Towing" and confirmed from early that the owner's name is Steve.

76. Plaintiff because of the threats from both Defendant Ross Towing and Defendant Officer K. Miller, Plaintiff left out of fear of losing her rights and being arrested and going to jail, without her vehicle.

77. On June 4, 2019 Plaintiff contacted Detroit Police commercial auto theft unit to inquiry about the overall investigation into her stolen vehicle, recovery of the vehicle, her missing property, the retrieval of the perpetrator(s) property from the vehicle and release of her vehicle from Ross Towing.

78. Plaintiff spoke with Defendant Detective Cross-Nelson over the phone, who was hostile, angry, impatient when speaking to Plaintiff and threatened to hang up on her when Plaintiff attempted to provide her report number.

79. Defendant Detective Cross-Nelson claimed that auto thefts in Detroit will never be assigned to a detective unless there is video that the detectives can obtain, he subsequently followed up on his threat and hung up on Plaintiff.

80. On June 5, 2019, Plaintiff contacted the commercial auto theft unit and police headquarters via telephone and later that same day appeared in person at the commercial auto theft unit on Sherwood in Detroit to inquiry about the investigation into her stolen vehicle, recovery of the vehicle, missing property and the retrieval of the perpetrator(s) property from the vehicle and the release of her vehicle.

81. Plaintiff was approached with anger, impatience, hostility, and unprofessionalism by Defendant Ms. Curry, civilian employee who refused to allow Plaintiff to speak with any officer in that unit and who intentionally provided false and misleading information to Plaintiff, stating Detective Cross-Nelson left her with information that there was no video of the theft of Plaintiff's vehicle and that he checked with local businesses and the city's camera.

82. Defendant Ms. Curry intentionally provided false and misleading information to Plaintiff, because her statements were completely contrary to Plaintiff's direct conversation with Detective Cross-Nelson just one day prior, on June 4, 2019.

83. Defendant Detroit Police Department never provided Plaintiff any information regarding her stolen vehicle nor has Defendant Southfield Police Department, Plaintiff reached out via telephone to the

17

Mayor of the City of Southfield, Oakland County Sheriff Department Auto Theft Unit, City of Southfield City Council regarding the matter herein, to no avail.

84. At the filing of this action Plaintiff continues to be deprived of her property which is her vehicle and based on information and belief, Defendant Ross Towing still hold the vehicle on the premises and refuses to release the vehicle to Plaintiff, depriving Plaintiff of her property in violation of Plaintiff's 14th Amendment constitutional right to not be deprived of her property.

85. WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive, equitable and declaratory relief and all other relief this Court deems just.

## COUNT I
## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 AND FOURTEENTH AMENDMENT VIOLATIONS

86. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

> No **state** shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unite **States**; nor shall any **state** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

87. Defendants have deprived Plaintiff of her vehicle, property and property rights in violation of Plaintiff's 14th Amendment constitutional right.

88. That as a direct and proximate result of Defendants' conduct, ministerial activities and actions as set forth above and complained of herein, Plaintiff has suffered the following injuries and damages and deprivation of her vehicle, including but not limited to: headaches; Severe emotional injuries; mental anguish; mortification an humiliation; depression, anxiety, loss of society, sleeplessness, irritability, loss of appetite, headaches and other symptoms; Fright, shock, indignity, humiliation,Loss of

18

enjoyment of daily activities; many of Plaintiff's injuries and damages are likely to be permanent and other damages.

89. Defendants City of Southfield, City of Detroit and Ross Towing are liable under state and/or federal law for all injuries proximately caused by: Intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to custom, policies, usage and/or practices which deprive citizens of their property, rights, and privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

90. Defendants acted under Color of Law and pursuant to statute, custom, usage, or practice, individually and in concert with one another, unlawfully, maliciously, and intentionally and with deliberate indifference and callous disregard of Plaintiff's established rights, in depriving Plaintiff of her property and equal protection under the law, in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of 42 USC, Section 1983, and *Municipal Liability Under 42 U.S.C. § 1983*.

91. Plaintiff had a substantive right to equal treatment and the *§ 1983 Defendants* violated plaintiff's right to equal protection under the law.

92. Plaintiff had a substantive right to equal protection, and the *§ 1983 Defendants in their arbitrary and capricious actions*, treated plaintiff differently than other persons who were similarly situated and deprived plaintiff of her right to equal protection under the law;

93. The Defendants with exposure under *§ 1983,* acted in clear violation of established constitutional rights that a reasonable person would have known were applicable, and the *§ 1983 defendants* were so obviously unlawful that only unknowledgeable persons, who knowingly

violated the law, would have behaved towards plaintiff as they did. A competent public official would recognize that plaintiff's rights were being violated.

94. The Defendants with exposure under *§ 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict and to hinder and impede, to inflict grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain humiliation, anxiety and injury.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive, equitable and declaratory relief and all other relief this Court deems just.

**COUNT II**
**CLAIM AND DELIVERY**

95. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

96. Defendant Ross Towing was a state actor, acting under color of law in towing and storing Plaintiff's stolen vehicle at the order of Defendant City of Southfield Police Department as part of the police department's towing service and Defendant Ross Towing relied upon governmental benefits in performing tows as the police department's contracted vendor. (*see Smith v. Insley's Inc., 499 F.3d 875 (2007)).*

97. Plaintiff is lawfully entitled to possession of the following described property, with a

an estimated value of $10,000.00: 2002 Buick Rendezvous SUV, AWD, 4 Door, 3rd Row Seating, Aluminum wheel covers, Stereo and all around speakers with subwoofers, computer printer, ODB scanner, and several tools.

98. Property claimed is an independent piece of property and was stolen from her in Detroit and recover by Defendant Southfield Police Department and ordered to be towed by Defendant Ross Towing to Ross Towing's location.

99. The property may be damaged, destroyed, concealed, disposed of, or used so as to substantially impair its value before final judgment, unless the property is taken into custody by court order, because the vehicle is in an unsafe location outside in the tow yard of Defendant Ross Towing exposed to the weather elements with electrical wiring hanging and exposed, with a severe cracked windshield with damage to the windshield molding and several other damages, all of which are exposed to the weather elements causing additional damages to the vehicle and resulting in additional costs for repairs, diminishing the vehicle's value.

100. Plaintiff appeared with the appropriate documentation and money to pick up the vehicle however Defendant Ross Towing refuses to release the vehicle and continues to deprive Plaintiff of her property, which is her vehicle.

101. Plaintiff is entitled to her property back and waiver of any costs for the release of her vehicle.

102. As a direct and proximate cause of Defendants' conduct, ministerial activities and actions as set forth above and complained of herein and deprivation of Plaintiff's vehicle, Plaintiff has suffered and continues to suffer the following injuries and damages including but not limited to: headaches; Severe emotional injuries; mental anguish; mortification an humiliation; depression, anxiety, loss of society, sleeplessness, irritability, loss of appetite, headaches and other symptoms; Fright, shock, indignity, humiliation,Loss of enjoyment of daily activities; many of Plaintiff's injuries and damages are

likely to be permanent and other damages. Had Defendant Ross Towing release Plaintiff's vehicle to her on June 3, 2019, Plaintiff would have her vehicle. Instead, Defendants bad acts resulted in Plaintiff suffering losses, damages, and injuries as result of the Defendants' acts, inactions and misconduct.

103. To the extent Defendant is in possession, custody, or control of Plaintiff's vehicle, such possession, custody, or control, is in violation of Plaintiff's ownership and right of possession of the vehicle.

104. Despite Plaintiff's production of appropriate funds, documents and request that Defendant Ross Towing return her vehicle, Defendant Ross Towing have not returned the vehicle.

105. Plaintiff is entitled to immediate possession of her vehicle.

## COUNT II
## UNJUST ENRICHMENT

106. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

107. Defendants received a benefit from the towing of Plaintiff's vehicle to their location and the unlawfully retention of Plaintiff's vehicle worth more than ten times the amount of the towing and storage costs.

108. An inequity results to plaintiff because of the retention of the benefit by Defendants. Barber v SMH (US), Inc, 202 Mich App 366, 375; 509 NW2d 791 (1993).

109. Equity demands the Plaintiff receive restitution for the inequity.

## COUNT III
## MONELL CLAIM – DELIBERATE INDIFFERENCE –
## FAILURE TO SUPERVISE AND OR TRAIN
## 42 U.S.C. § 1983 MUNICIPAL/SUPERVISORY LIABILITY

110. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

22

111. Defendants City of Southfield and City of Detroit failed to adequately scutinize the employment of Defendants and acted with deliberate indifference in training, supervising and/or retaining Defendants, when the City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department had notice that Defendants had histories of violating citizen's rights or were neither personally nor psychologically suited to be employed as law enforcement officers.  Defendants City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department acted recklessly and/or with deliberate indifference, intentional and callous disregard when it practiced and/or permitted statute, customs, policies, usages, and/or practices, that resulted in violations to PLAINTIFF's constitutional rights as complained herein.

112.  These customs, practices, and/or policies included but were not limited to the following:

   a.  Failing to supervise officers to prevent violations of citizens' constitutional rights;

   b.  Failing to adequately train and/or supervise officers regarding proper reporting, communicating and investigating stolen vehicles;

   c. Failing to control and/or discipline officers known to harass, intimidate, and/or abuse or threaten citizens;

   d. Failing to supervise, review, and/or discipline officers whom City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department knew or should have known were violating or were prone to violate citizen's constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct;

   e. Failing to require compliance of its officers and/or employees with established policies and/or procedures and/or rules and discipline or reprimand officers who violate these established policies;

113.   City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department, had in place training or supervision that was inadequate for the tasks performed by its officers.

23

114. The inadequacy was the result of the municipality's (City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department) deliberate indifference which is successfully alleged.

115. The above mentioned inadequacy was closely related to or actually caused Plaintiff damages and injuries and to be deprived of her vehicle.

116. Therefore, the City of Southfield and/or Southfield Police Department and City of Detroit and/or Detroit Police Department at all time relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of their respective employees and/or agents and consequently are directly liable for the acts of these agents, pursuant to 42 U.S.C. Section 1983.

117. That as a direct and proximate result of Defendants' conduct, ministerial activities and actions as set forth above and complained of herein, Plaintiff has suffered the following injuries and damages and deprivation of her vehicle, including but not limited to: headaches; Severe emotional injuries; mental anguish; mortification an humiliation; depression, anxiety, loss of society, sleeplessness, irritability, loss of appetite, headaches and other symptoms; Fright, shock, indignity, humiliation,Loss of enjoyment of daily activities; many of Plaintiff's injuries and damages are likely to be permanent and other damages.

118. Defendants City of Southfield, City of Detroit and Ross Towing are liable under state and/or federal law for all injuries proximately caused by intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to custom, policies, usage and/or practices which deprive citizens of their property, rights, and privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

119. Defendants acted under Color of Law and pursuant to statute, custom, usage, or practice, individually and in concert with one another, unlawfully, maliciously, and intentionally and with

deliberate indifference and callous disregard of Plaintiff's established rights, in depriving Plaintiff of her property and equal protection under the law, in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of 42 USC, Section 1983, and *Municipal Liability Under 42 U.S.C. § 1983.*

120. The Defendants with exposure under *§ 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict and to hinder and impede, to inflict grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain humiliation, anxiety and injury.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive, equitable and declaratory relief and all other relief this Court deems just.

## COUNT IV
## ASSAULT AND BATTERY – MICHIGAN STATE LAW CLAIM

121. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

121. Defendants threatened bodily harm against Plaintiff which caused her to be in fear of imminent peril and/or great bodily harm.

122. Defendants had apparent authority and ability to carry out the treats of bodily harm and in fact did intentionally and without permission of Plaintiff.

123. At all time relevant, Defendants were acting within the course and scope of their employment therein rendering Defendants City of Southfield and/or Southfield Police Department and Ross Towing liable pursuant to the theories of liability as delineated herein.

124. The acts and omissions of Defendants constitute assault and battery, as well as willful, wanton, intentional, and reckless conduct under the law of the State of Michigan.

125. That as a direct and proximate result of the above- and below-described actions, LaTausha Simmons, suffered damages, including but not limited to:

Headaches; Severe emotional injuries; mental anguish; mortification and humiliation; depression, anxiety, loss of society, sleeplessness, irritability, loss of appetite, headaches and other symptoms; fright, shock, indignity, humiliation, loss of enjoyment of daily activities; many of Plaintiff's injuries and damages are likely to be permanent and other damages and all other damages allowable by law, including nominal damages solely for being subjected to Constitutional Rights being violated.

126. Wherefore, Plaintiff prays for judgment against Defendants and each of them in their individual and official capacities, in whatever amount Plaintiff is found to be entitled in excess of Seventy-Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interests, attorney fees, as well as substantial punitive and exemplary damages together with such other relief that this Honorable Court deems just.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO ALL DEFENDANTS

127. Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

128. Through their unreasonable and unlawful conduct, the Defendants either intended to cause Plaintiff emotional distress or knew or should have known that their actions or inactions would result in

serious emotional distress.   Further, their actions toward Plaintiff were so extreme and outrageous as to go beyond all possible bounds of decency and were intolerable.

129.   In the manner described more fully above, the Defendants engaged in extreme and outrageous conduct.

130.   The Defendants with exposure under *§ 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict and to hinder and impede, to inflict grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain humiliation, anxiety and injury.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive, equitable and declaratory relief and all other relief this Court deems just.

**COUNT VI**
**NEGLIGENCE**

131.   Plaintiff hereby incorporates and repeats by reference each and every paragraph of this Complaint as though fully set forth herein.

132.   At all times relevant hereto, Defendants owed a duty to not act in a grossly negligent manner to act prudently and reasonable care and to avoid the use of unnecessary and unreasonable force.

133.   Defendants breached the duties owed to Plaintiff LaTausha Simmons when Defendants acted within a substantial lack of concern and with reckless disregard for Plaintiff.

134.   At all times relevant, Defendants conduct was so reckless as to have a substantial disregard as to whether injury would occur and/or otherwise amounts to gross negligence.

135. As a result of the grossly negligent conduct of Defendants such acts were the proximate cause of all injuries claimed herein.

136. That Defendants are not entitled to governmental immunity.

137. The Defendants with exposure under *§ 1983* inflicted such measures upon plaintiff in a manner calculated to cause monetary damages, past, present and future, to inflict and to hinder and impede, to inflict grievous emotional suffering, including embarrassment, outrage, severe and grievous emotional anguish, pain humiliation, anxiety and injury.

WHEREFORE Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive, equitable and declaratory relief and all other relief this Court deems just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, in their individual and official capacities, jointly and severally, in whatever amount Plaintiff is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00), award costs, interests, as well as substantial punitive and exemplary damages, and grants her Motion for Claim and Delivery, Temporary Restraining Order, Injunctive and declaratory relief:

a. awarding immediate possession of her vehicle, the described property above, directly to Plaintiff pending final judgment.

b. injunction and temporary restraining order refraining and enjoining Defendants from damaging, destroying, concealing, disposing of or using so as to substantially impair its value, the property described above.

c. Damages for Mental and Emotional Distress including an award for Plaintiff's emotional injury and suffering, her shock, fright, outrage, humiliation, an award for punitive and exemplary damages, attorney fees, costs and interest, as may be allowed under law;

d. Legal relief including compensatory and consequential for all of the injuries identified in the with the willful misconduct of Defendants;
amount in excess of the statutory amount; punitive and exemplary damages commensurate

e. And and all other relief that this Court deems equitable, necessary, and just.

Respectfully submitted,

LaTausha Simmons
20500 Dean
Detroit, MI 48234

Date: June 10, 2019

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LaTausha Simmons

Plaintiff,

v.                                                    CASE NO.

                                                      Hon.

City of Southfield, a municipal corporation,
Southfield Police Department, Police Chief Joseph Thomas, Jr.,
Officer K. Miller, Officer A. Sharp, Ross Towing, Oakland County,
Oakland County Sheriff Department,
City of Detroit, a municipal corporation,
Detroit Police Department, Police Chief James Craig,
Officer  P. Thomas, Officer A. Carr, Lieutenant Duncan,
Sgt. Dunning, Sgt. Williams, Detective Cross Nelson,
Ms. Curry, civilian employee of the Detroit Police CAT Unit, and
other unknown Officers of the Detroit Police CAT Unit,
Individually, and in their Official Capacities
Jointly and Severally,

                    Defendants.

_____

LaTausha Simmons
Plaintiff, Pro Se
20500 Dean
Detroit, MI 48234

_____

### JURY DEMAND

**NOW COMES,** Plaintiff, LaTausha Simmons, Pro Se and hereby demands a trial by jury in the

above captioned matter.

                                        Respectfully submitted,

                                        _____
                                        LaTausha Simmons
                                        20500 Dean
                                        Detroit, MI 48234

Date: June 10, 2019

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LaTausha Simmons
         Plaintiff,

v.                                               CASE NO.
                                               Hon.

City of Southfield, a municipal corporation,
Southfield Police Department, Police Chief Joseph Thomas, Jr.,
Officer K. Miller, Officer A. Sharp, Ross Towing, Oakland County,
Oakland County Sheriff Department,
City of Detroit, a municipal corporation,
Detroit Police Department, Police Chief James Craig,
Officer  P. Thomas, Officer A. Carr, Lieutenant Duncan,
Sgt. Dunning, Sgt. Williams, Detective Cross Nelson,
Ms. Curry, civilian employee of the Detroit Police CAT Unit, and
other unknown Officers of the Detroit Police CAT Unit,
Individually, and in their Official Capacities
Jointly and Severally,

                    Defendants.

---

LaTausha Simmons
Plaintiff, Pro Se
20500 Dean
Detroit, MI 48234

---

## Statement of Verification

I have read the above complaint and it is correct to the best of my knowledge.

                                         Respectfully submitted,

                                         LaTausha Simmons
                                         20500 Dean
                                         Detroit, MI 48234

Date:  June 10, 2019

31

Date:  June 10, 2019

# EXHIBIT 1

wing
graph Rd.

## Southfield PD
### 26000 Evergreen, Sfld, Mi. 48076 Ph:2487965500

**Incident / Tow Details:**

| Incident Number | Officer |
|---|---|
| 90020807 | MARTINEZ, JOSEPH (833035) |

| Date/Time | Reason for Impound | Impound ID |
|---|---|---|
| 6/02/19 01:15 | RECOVERED STOLEN | 511719 |

Incident Location
7500 NORTHWESTERN HWY

| Tow Company | Location Towed To |
|---|---|
| POLICE IMPOUND (ROSS TOWING) | |

Tow Driver Name

**Vehicle:**

Year / Make / Model / Body Style / Color
002 / BUICK / RENDEZVOUS / FOUR DOOR / GRAY

| License No / State / Year / VIN | Plate Improper? |
|---|---|
| CHG166 / MI / 2019 / 3G5DA03EX2S570547 | NO |

Plate Status - NONE / MISSING / IMPROPER
NO / NO / NO

**Owner:**

Name & Address
ATAUSHA FAITH SIMMONS
0500 DEAN ST, DETROIT MI, MI 48234-2014

**Driver:**

Name & Address
N/A N/A N/A
N/A, N/A, N/A N/A

Phone Nbr / Cell Phone Nbr
N/A / N/A

**Items:**

| Description | Notes | Description | Notes |
|---|---|---|---|
| AUDIO/ENTERTAINMENT EQUIPMENT | | GPS/NAVIGATION SYSTEM | |
| TIRES & WHEELS | | | |

Private Property Complaint
NO

**Personal Property:**

MISC PERSONAL ITEMS OF LOW VALUE.

**Vehicle Damage:**

DENTS, DINGS, SCRATCHES ALL AROUND. THE GLOVEBOX IS MISSING
THE BACK SEAT IS DAMAGED. IGNITION APPEARS IN-TACT. NOTHING O
SIGNIFICANT VALUE APPEARS MISSING, VIN INTACT.

Owner Sign:

Notes:
RECOVERED STOLEN VEHICLE / FROM BAYMONT INN 27500
NORTHWESTERN, SOUTHFIELD

MIKE 75     NO KEY     Wineg 55
LOT 2       TOW $125

**Ross Towing**
**21360 Telegraph Rd.**
**Southfield, MI  48033**
**248-356-6011**

| | | | |
|---|---|---|---|
| Invoice # | : 41553 | Date | : 06/03/19 |
| Billed To | : CASH / IMPOUND REVENUE | | |
| Year | : 2002 | Name | : NATASHA FAITH SIMMONS |
| Make | : BUICK | Address | : 20500 DEAN ST |
| Model | : RENDEVOUS | City | : DETROIT |
| Style | : SPORTS UTILITY | State | : MI |
| Color | : GRAY | ZIP | : 48234 |
| V.I.N | : 3G5DA03EX2S570547 | Home Phone | : - - |
| License | : 1920807 | Work Phone | : - - |
| State | : MI | Cash Value | : .00 |
| Odometer | : | Sale/Auction # | : |
| Reason | : REC / STOLEN | Sale Date | : |
| P.O. # | : | Call # | : |
| Membership # | : | Member Exp. | : |
| Lot Barcode | : | Payout Desc. | : |
| KEYS | : NO KEY | L. PLATE # | : CHG166 |
| Driver | : MIKE | Need Release? | : N |
| Truck # | : 75 | Release Date | : 06/03/19 |
| Type of Tow | : FLAT BED | Release # | : |
| Requested By | : SOUTHFIELD POLICE IMPOUND | Released To | : |
| Location | : 27500 N W HWY | | |
| Destination | : ROSS IMPOUND LOT | Lot/Row/Slot | : 2 |
| Time of Call | : | Time Dispatch | : |
| Arrival Time | : | Hook Time | : |
| Drop Time | : | Cleared Time | : |
| Total Hours | : 0.00 | Hourly Rate | : $0.00 |

Billed To: CASH / IMPOUND REVENUE

### Mileage Summary

| Beginning | Ending | Total Miles | Rate |
|---|---|---|---|
| 0 | 0 | 0 | $ 0.00 |
| 0 | 0 | 0 | $ 0.00 |

### Storage Summary

| Date In | Date Out | Total Days | Rate |
|---|---|---|---|
| 06/03/19 | 06/03/19 16:37 | 1.0 | $ 15.00 |

| | |
|---|---|
| Towing | $125.00 |
| CLEAN UP | $0.00 |
| Labor | $0.00 |
| Winching | $0.00 |
| Misc | $0.00 |
| | $0.00 |
| Unloaded | $0.00 |
| Loaded | $0.00 |
| Discount | $0.00 |
| Subtotal | $125.00 |
| ADMIN FEE | $0.00 |
| DOLLY | $0.00 |
| Storage | $15.00 |
| FUELSUR | $0.00 |
| Payout | $0.00 |
| Tax | $0.00 |
| Tax 2 | $0.00 |
| Total | $140.00 |
| Amount Paid | -$140.00 |
| Pay Method: CASH | |
| **Balance Due** | $140.00 |

BY SIGNING THIS INVOICE; I RELEASE ROSS TOWING AND IT'S STAFF FROM ANY LIABILITIES AND TO WAIVE ALL CLAIMS AGAINST ROSS TOWING FOR ANY LOSS, DAMAGE, INJURY OR EXPENSE RESULTING FROM THE TOWING AND STORAGE OF THIS VEHICLE.

Signature: *Denoting Personal VEHICLE WAIVER Away Property Balance is still with Due* [handwritten annotations]

ain Johnson
+ I Lewis } 313-237-2850

Detectives - 313-596
DOWNTOWN SERVIC

# DETROIT POLICE DEPARTMENT (DOWNTOWN SERVICES)

20 ATWATER, DETROIT, MICHIGAN 48226

REPORT# _190430-0377_ REPORT TYPE: _UDAA_

OFFICER: _DOSO P Thomas_ DATE: _4/30/19_

LOCATION: _E Congress/Chrysler_ TIME: _8:45 p_

A COPY OF YOUR REPORT WILL BE AVAILABLE WITHIN 5-10 BUSINESS DAYS. A COPY CAN BE PICKED UP AT (4700 W. FORT; MON-FRI BETWEEN THE HOURS OF 8AM-3:45PM). REPORTS ARE $10.00. INVESTIGATORS: 313-596-1340. RECORDS: 313-596-1909.

**detroit police**

DETROIT POLICE DEPARTMENT
DOWNTOWN SERVICES UNIT
20 ATWATER, DETROIT, MI 48226
(313) 237-2850

DATE: _4·30·19_                     TIME: _7PM_

INCIDENT REPORT # _____          OFFICER: A. CARR #3747

ACCIDENT REPORT # _____          LOCATION: _CHRYSLER/LARNED_

A COPY OF YOUR REPORT WILL BE AVAILABLE **AFTER APPROXIMATELY TEN (10) DAYS FROM THE DATE OF INCIDENT.** A COPY OF THE REPORT CAN BE PICKED UP AT 4700 W. FORT ST. DETROIT, MI 48209 **MONDAY – FRIDAY** BETWEEN **8:00 AM – 3:45 PM.** THERE IS A $10.00 FEE FOR ALL REPORTS

INVESTIGATORS – (313) 5961340          RECORDS SECTION – (313) 596-1909

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.     1

257.252. Report of vehicle theft through law enforcement information..., MI ST 257.252

Michigan Compiled Laws Annotated
Chapter 257. Motor **Vehicles**
Michigan **Vehicle** Code (Refs & Annos)
Chapter II. Administration, Registration, Certificate of Title and Anti-Theft (Refs & Annos)
Special Anti-Theft Laws (Refs & Annos)

M.C.L.A. 257.252

257.252. Report of **vehicle** theft through law enforcement information network; report of recovery

Currentness

Sec. 252. A **police** agency, upon receiving reliable information that any **vehicle** registered under this act has been **stolen**, shall immediately report the theft through the law enforcement information network. Upon receiving information that a **vehicle** previously reported as **stolen** has been recovered, the **police** agency shall immediately report the fact of the recovery through the law enforcement information network.

**Credits**

Amended by P.A.1980, No. 249, § 1, Imd. Eff. July 28.

**Editors' Notes**

Relevant Additional Resources
Additional Resources listed below contain your search terms.

**HISTORICAL AND STATUTORY NOTES**

**Source:**

P.A.1949, No. 300, § 252, Eff. Sept. 23.

C.L.1948, § 257.252.

P.A.1964, No. 99, § 1, Eff. Aug. 28.

P.A.1966, No. 157, § 1, Imd. Eff. July 1.

# CIVIL COVER SHEET

County in which action arose: Oakland

_____ sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as _____ .ules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the _____ .ing the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| PLAINTIFFS | DEFENDANTS |
|---|---|
| USHA SIMMONS | CITY OF SOUTHFIELD, ET AL., |

**(b)** County of Residence of First Listed Plaintiff **WAYNE**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

Case: 5:19-cv-11726
Judge: Levy, Judith E.
MJ: Majzoub, Mona K.
Filed: 06-10-2019 At 04:07 PM
CMP SIMMONS v CITY OF SOUTHFIELD, ET AL (dat)

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983, 1985 and 1988

Brief description of cause:
Deprivation of Constitutional rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
June 10, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously dismissed?  ☐ Yes ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.  Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)  ☐ Yes ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

**Notes :**