UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATAUSHA SIMMONS,                                    Case No. 19-11726

              Plaintiff                          Judith E. Levy
      v.                                            United States District Judge

CITY OF SOUTHFIELD, *et al.*,                        Michael J. Hluchaniuk
                                            United States Magistrate Judge
              Defendants.
_____/

**REPORT AND RECOMMENDATION:
<u>PLAINTIFF'S MOTIONS FOR POSSESSION PENDING FINAL
JUDGMENT AND PRELIMINARY INJUNCTION (ECF Nos. 2, 15, 20)
AND DEFENDANT ROSS TOWING'S MOTION TO SET ASIDE ENTRY
OF DEFAULT (ECF No. 27)</u>**

## I.      PROCEDURAL HISTORY

Plaintiff LaTausha Simmons brought this action *pro se* under federal and

state law on June 10, 2019.  (ECF No. 1).  Simmons filed three motions for claim

and delivery (or possession pending final judgment) and temporary restraining

order/injunctive relief.  (ECF Nos. 2, 15, 20).  Defendants City of Southfield,

Southfield Police Department, Joseph Thomas, K. Miller, A. Sharp filed responses

to the motions at docket nos. 2 and 20.  (ECF Nos. 19, 22).  Simmons requested a

Clerk's entry of default against defendant Ross Towing, and on August 13, 2019,

the Clerk entered the default.  (ECF No. 26).  On August 16th, Ross Towing filed a

motion to set aside entry of default.  (ECF No. 27).  Simmons was ordered to respond to the motion no later than November 20, 2019.  (ECF No. 29).  On December 2, the Court granted Simmons an extension to file a response by January 6, 2020.  (ECF No. 33).  Simmons has not filed a response, but has asked for more time considering health problems and her incarceration.  (ECF No. 35).  The Court denied the request.  (ECF No. 38).  District Judge Judith E. Levy referred the matter to the undersigned for all pretrial matters.  (ECF No. 34).

## II.    PLAINTIFF'S COMPLAINT

Plaintiff alleges the following in her complaint.  On April 30, 2019, while she was at the University of Detroit Mercy, someone stole her car key from her jacket and then stole her car.  (ECF No. 1, ¶ 23).  When she became aware of the car theft, she walked to a nearby gas station and called the police.  (¶ 26).  Defendant Detroit Police Officer A. Carr arrived at the gas station but refused to take a report of the theft or put any information into the Detroit Police Department's "system" regarding the theft.  (¶ 29).  Officer Carr told plaintiff that she needed to report the theft "in person."  (¶ 30).  Simmons appeared at "Downtown services" and filled out and signed an affidavit before she could report the theft.  The affidavit was given to defendant officer Doso P. Thomas, who refused to write a report because Simmons did not have identification—it was in the stolen car.  (¶¶ 31-34).  After she left to get another form of identification,

2

Thomas edited her affidavit without her consent and ignored her objection to the changes.  Thomas changed the document to contain false, misleading, inaccurate information regarding the theft of the vehicle.  (¶ 35).  On May 1, 2019, at 2:52 am, Simmons appeared at Detroit Police Department Third Precinct and was met by Officer Witcher.  Witcher was rude and hostile towards her, and refused to assist her.  (¶ 38).  Later that morning plaintiff called the Commercial Auto Theft Unit at the Detroit Police Department and found out that the police report contained an error; it stated that she still had possession of the car key, which she did not.  (¶ 40-41).  A week later she learned that defendant Detective Cross-Nelson was the detective assigned to her case.  (¶ 43).

Thereafter, Simmons continued to call Cross-Nelson and the auto theft unit for information but was ignored or met with anger and hostility.  (¶ 44-49, 52).  On May 14, 2019, she was told that no detective was assigned to her case.  (¶ 50).

On June 2, 2019, the stolen vehicle was recovered by the Southfield Police Department in the City of Southfield.  The police department ordered that the car be towed by defendant Ross Towing.  (¶ 54).  The Southfield Police Department did not investigate the stolen vehicle, damage to the vehicle, or missing property from the vehicle.  (¶ 59).  On June 3rd, she went to Ross Towing to retrieve her car.  (¶ 58).  She was not allowed to see the vehicle until she received a vehicle release from the Southfield Police Department and paid $140.00 to get the vehicle

back from Ross Towing.  (¶ 60).  After obtaining the vehicle release from the police department and acquiring the money, she went back to Ross Towing.  The company would not allow her to go inside the vehicle, but she could inspect the exterior.  She noticed damage to the car—a broken headlight, missing passenger sideview mirror, scratches, property missing and property added by the thieves.  (¶ 63).  Ross Towing would not address her questions about the damage and additional property.  (¶ 64).

Once Simmons provided payment for the storage and towing costs and the release of vehicle from the police, a Ross Towing employee gave her documents to sign.  One of these documents was a waiver of her rights to recover for damage to her vehicle.  She refused to sign this document without an alteration stating that she preserved all her rights.  (¶¶ 66-68).  The Ross Towing employee became upset, threw the documents at Simmons, came around the counter and opened the door for Simmons, yelled and demanded that she leave, and threatened to call the police for trespassing.  (¶ 70).  The employee's actions—walking towards her aggressively and yelling at her—made Simmons fear being arrested.  (¶ 71).  Southfield Police Officers Miller and Sharp arrived in response to Simmons' 911 call outside Ross Towing.  Simmons explained that she had the vehicle release and payment, but Ross Towing refused to release the car.  Officer Miller then

4

"threatened" her that she better sign her name on the release of liability document, and only her name, or she would not get her car back.  (¶ 73-74).

On June 4, 2019, Simmons contacted Detroit Detective Cross-Nelson about the investigation into the car theft.  Cross-Nelson informed her that a detective would not be assigned to the case unless there was video of the theft.  (¶ 79).  The next day, Detroit Police Department civilian employee Ms. Curry (defendant) was unprofessional and hostile on the phone with Simmons.  Curry informed Simmons that Cross-Nelson said there was no video of the car theft and that Cross-Nelson checked with local business and city camera.  (¶ 80-81).

Simmons brings the following claims: violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; claim and delivery; unjust enrichment; failure to supervise or train municipal liability; assault and battery under Michigan law; intentional infliction of emotional distress; and negligence.  She asks for immediate possession of her vehicle, an injunction and temporary restraining order enjoining "Defendants" from damaging or destroying the vehicle, and damages. (*Id.* at PageID.29).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   <u>Motion to Set Aside Entry of Default</u>

Plaintiff filed proofs of service for a number of defendants, including defendant Ross Towing.  The proof of service document, signed under penalty of

perjury by the process server, indicates that Ross Towing was served by personal service on its resident agent, Christopher Maiberger, on July 1, 2019.  (ECF No. 24, PageID.300).  The process server gave some additional information: he says that he personally served Maiberger on July 1, 2019 at 12:30pm at 21360 Telegraph Road, Southfield, MI 48033.  He also wrote of additional attempts to serve by mail at that same address. Specifically, that the resident agent was served by mailing the summons and complaint by certified mail with a return receipt requested, but the agent refused to sign for the return receipt.  Service was also attempted by sending the summons and complaint by "First class mail" to the resident agent and Ross Towing, and by "hand delivery."  Both mailings were sent to the 21360 Telegraph Rd. address.  (*Id.*).

On August 13, 2019, upon plaintiff's request, the Clerk of Court entered a default against Ross Towing in light of plaintiff's affidavit statement that Ross Towing was served on July 1, 2019, and had not yet answered the complaint. (ECF No. 26).

Ross Towing maintains that it was never properly served with the summons and complaint, and so the entry of default should be set aside.  First, it points out that its address is not 21360 Telegraph Rd.  The 21360 address is the tow yard at Ross Towing.  The business address—the address listed on the Michigan Licensing and Regulatory Affairs website—is 21340 Telegraph Rd.  (ECF No. 27-1,

PageID.323).  Second, Ross Towing says that its resident agent, Christopher

Maiberger, was not personally served on July 1, 2019 or any other date, despite the

process server's sworn declaration otherwise.  (ECF No. 27-1, PageID.323).  Mr.

Maiberger signed an affidavit in which he states he "was never personally served

with a summons or complaint in the Latausha Simmons v. Ross Towing et al.

case."  (ECF No. 27-2, PageID.329).  Ross Towing also argues that it has a

meritorious defense to the case since plaintiff did not state a constitutional

violation against it and that plaintiff will not be prejudiced by allowing Ross

Towing to go forward in this case since the case has not been pending very long.

(ECF No. 27-1, PageID.325-26).

A valid proof of service signed under oath by the process server is

presumptive evidence of valid service of process.  *Fifth Third Bank v. Mytelka*,

2009 WL 2046849 (W.D.Ky. July 10, 2009); *see also Blair v. City of Worcester*,

522 F.3d 105, 111 (1st Cir. 2008) ("A return of service generally serves as prima

facie evidence that service was validly performed.").  In this case, however, Ross

Towing came forward with evidence to rebut that presumption.  At this point, it is

not altogether clear that proper service of process has been effectuated on the

company.  There is a dispute as to whether personal service was completed, and

the attempts at service by mailing were not proper.[1]  In a separate order, the Court concluded that the more prudent course of action was not to determine Ross Towing served, but to order plaintiff to re-attempt proper service of process.

Generally, a motion to set aside entry of default will be granted where the defendant has not been properly served.  *Sandoval v. Bluegrass Regional Mental Health-Mental Retardation Board*, 229 F.3d 1153, 2000 WL 1257040, at *5 (6th Cir. 2000) (table) (citing 10 A. Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2682); *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining that "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant[,]" and "in the absence of personal jurisdiction, a federal court is powerless to proceed to an adjudication." (internal quotation marks and citations omitted)); *Etherly v. Rehabitat Systems of Mich.*, No. 13-11360, 2013 WL 3946079 (E.D. Mich. July 31, 2013) ("if service of process was not proper, the court must set aside an entry of default.").

---

[1] Under M.C.R. 2.105(D)(2), service on a private corporation may, in addition to personal service under subsection (D)(1), be effectuated by serving a summons and complaint on a director, trustee, or person in charge of an office or business establishment of the corporation, and sending a summons and complaint by registered mail, "addressed to the principal office of the corporation."  As noted above, the mail attempts were sent to the 21360 address, but the business office is located at 21340 Telegraph Rd.  And, there is no evidence that a copy was personally served upon a person in charge of the business office.

Though failure of service may be a reason to grant Ross Towing's motion, the undersigned recommends granting the motion to set aside entry of default for other good cause shown.   Federal Rule of Civil Procedure 55 provides that courts "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  In evaluating whether the movant has sufficiently established good cause, the Sixth Circuit instructs that courts must consider whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."  *United Coin Meter Co. v. Seaboard Coastline RR*., 705 F.2d 839, 844 (6th Cir. 1983) (citations omitted).

Ross Towing's default does not appear to be willful.  According to the company, it did not know this case had been filed against it until it received the request for entry of default.  (ECF No. 27-1, PageID.323-24).  And, of course, it is Ross Towing's position that it has not been properly served in this matter.  It also appears that there would be no prejudice to plaintiff if the default were set aside. Thus far, only the City of Southfield and the defendants associated with the city have filed responses to the complaint.[2]  To the extent setting aside the default would delay resolution of this case, delay alone is an insufficient basis on which to conclude there will be prejudice.  The Sixth Circuit has stated that "delay alone is

---

[2] Service of process on the Detroit Police individual defendants was also addressed in a separate order.

not a sufficient basis for establishing prejudice." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Systems, Inc*., 815 F.2d 391, 398 (6th Cir. 1987) (internal quotation marks omitted).  Instead, "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.*  There is no reason to believe any of these harms will occur.

Finally, Ross Towing has a meritorious defense.  A defendant is not required to show that its defense is likely to succeed on the merits or offer detailed factual allegations in support of the defense. *Id.* The Sixth Circuit has held that a defense need only be "good at law," and present only "a hint of a suggestion which, proven at trial, would constitute a complete defense." *Williams v. Meyer,* 346 F.3d 607, 614 (6th Cir.2003)) (citation and quotations omitted).  "Under this standard, if Defendant raises any defense cognizable at law, it is deemed to have satisfied the requirement of a meritorious defense." *Simmons v. Ohio Civil Serv. Emp. Assoc.*, 259 F. Supp. 2d 677, 686 (S.D. Ohio 2003); *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983) ("In determining whether a defaulted defendant has a meritorious defense "'[l]ikelihood of success is not the measure.'") (citation omitted).  The defendant is not required to prove the likelihood that the defense will succeed. *Id.*  Raising a defense that the plaintiff

failed to state a claim on which relief can be granted is a defense that is good at law.  *Id.*; *see also Laborers' International Union of N. Am., Local 141 v. Gayston Corp.*, 2017 WL 3769394, at *2 (S.D. Ohio Aug. 27, 2019) (Finding that failure to state a claim is a meritorious defense).  If plaintiff has not properly or sufficiently stated her claims, then Ross Towing's defense is indeed meritorious and it would be entitled to dismissal from this case.

Indeed, the undersigned is concerned that plaintiff has not stated a constitutional claim against Ross Towing on that ground that Ross Towing may not be a state actor under 42 U.S.C. § 1983.  To establish a prima facie case under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  "A plaintiff must show more than joint activity with the state to prove that a private party working for the government is a state actor. In particular, she must demonstrate "pervasive entwinement" between the two entities surpassing that of a mere contractual relationship."  *Partin v. Davis*, 675 Fed. Appx. 575, 587 (6th Cir. 2017) (citing *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006)); *see also Plummer v. Detroit Police Dep't*, 2017 WL 1091260, at *3-4 (E.D. Mich. Mar. 23, 2017) ("Even if the police directed the company to tow Plaintiff's vehicle to the company's storage facility, the company's involvement falls short of

demonstrating the kind of close nexus with government officials that is necessary to expose it to § 1983 liability."); *Banks v. Fedierspiel*, 2011 WL 1325046, at *5 (E.D.Ky. Apr. 1, 2011) ("Private towing companies with whom municipalities contract to tow and impound cars do not become state actors by performing their public contracts.").

As to the state law claims: claim and delivery, unjust enrichment, assault and battery, intentional infliction of emotional distress, and negligence, it appears that Ross Towing's defense is meritorious to at least some, if not all, of the claims (and, again, likelihood of success of the defense is not the determinative factor). For example, it does not appear that plaintiff stated a cognizable unjust enrichment claim. "Under Michigan law, the elements of an unjust enrichment claim are '(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain.'" *Wysong Corp. v. M.I. Industries,* 412 F.Supp.2d 612, 624-24 (E.D. Mich. 2005) (quoting *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991)). Plaintiff did not allege facts to support the first element of the claim—that Ross Towing received a benefit from the plaintiff (or by having her car stored in its tow yard), aside from owing the usual towing fee of $140.00 which she does not allege to be inequitable. (ECF No. 1, ¶¶ 106-09).

And it appears that plaintiff did not state a cognizable negligence claim because she brings forth facts that establish only intentional conduct on the part of Ross Towing or its employee, i.e. throwing paper at her and yelling at her to leave, and refusing to release her car.  It is the actor's state of mind that differentiates an intentional tort from ordinary negligence. See *Behar v. Fox,* 249 Mich. App 314, 319 (2001).  Assault and battery are intentional torts.  *VanVorous v. Burmeister,* 262 Mich. App 467, 482-483 (2004).  Intentional and negligent conduct are separate concepts in the realm of tort. There exists no tort of negligent assault and battery.  *Sudul v. City of Hamtramck,* 221 Mich. App 455, 460-461 (1997).  Thus, to the extent that plaintiff claims the employee was negligent when it threw documents at her, the claim will likely not succeed.  *See Allstate Ins. Co. v. Clarke*, 2007 WL 2710821, at *3 (Mich. Ct. App. Sept. 18, 2007) ("Carpentier's claim of negligence is premised on the reasonableness of Clarke's use of force against Salinas, which cannot transform an intentional tort into one of negligence.").  Similarly, Ross Towing's keeping possession of her vehicle until she signs a waiver of liability form is an intentional act.

On balance, the undersigned suggests that there is good cause to set aside the entry of default against Ross Towing; the motion should be granted.

B.    Motions for Injunctive Relief

Simmons has filed three motions for injunctive relief, all in large part for the return of her car.  These motions are combined motions for claim and delivery under Michigan Law and motions for preliminary injunction or temporary restraining order under Fed. R. Civ. P. 65.  (ECF Nos. 2, 15, 20).  Claim and delivery is a type of civil action.  M.C.R. 3.105.  In a claim and delivery action the plaintiff may bring a motion for possession pending final judgment; it does not appear that there is a separate motion called a motion for claim and delivery.  Simmons' motions are more accurately motions for possession pending final judgment, which can be brought in a claim and delivery action.  She acknowledges as much when she specifically requests "possession of [her vehicle] pending final judgment."  (ECF No. 2, PageID.43, ECF No. 15, PageID.110, ECF No. 20, PageID.177).  In such a motion, the plaintiff must describe the property to be seized and state sufficient facts showing that the property will be destroyed unless it is taken into custody by court order.  M.C.R. 3.105(E).  This is precisely what she did, or attempted to do, in all three motions.  Hence, the undersigned will analyze her motions for "claim and delivery" as motions for possession pending final judgment.  The claim in her complaint for claim and delivery will be addressed when the merits of her claim are before the Court.

      1.     Motions at ECF Nos. 2 and 15

           a.     Injunction under Fed. R. Civ. P. 65

Plaintiff's first motion for an injunction was filed the same day as her

complaint and is *ex parte*.  The second motion, at docket no. 15, was filed July 1,

2019.  On that date, according to the proofs of service, some of the defendants had

been served in the matter, but not all.  (*See* ECF No. 24).  Still, it appears this

second motion was also brought *ex parte*, as there is no certificate of service of the

motion on any of the defendants. The undersigned concludes, then, that both

motions were filed as *ex parte* motions.  However, the City of Southfield, the

Southfield Police Department, Officers Miller and Sharp, and Southfield Police

Chief Thomas (the "Southfield defendants") responded to the first motion at docket

no. 2 after they became aware of it.  (ECF No. 19).

Fed. R. Civ. P. 65 provides that the Court may issue a preliminary injunction

"only on notice to the adverse party."  A temporary restraining order may be issued

without notice to the adverse party "only if:

> (A) specific facts in an affidavit or a verified complaint
> clearly show that immediate and irreparable injury, loss,
> or damage will result to the movant before the adverse
> party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts
> made to give notice and the reasons why it should not be
> required.

Fed. R. Civ. P. 65(b)(1).  "Reasonable notice" means information received within a

reasonable time to permit an opportunity to be heard. *Brown v. Countrywide Home*

*Loans*, 2009 WL 1798069, at* 1 (E.D. Mich. June 19, 2009) (citing *Granny Goose*

*Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423,439, (1974) (noting that *ex parte* "temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard").  Only a temporary restraining order can be granted before the defendant(s) is/are served.  *See Trevino v. Horizon Bankcorp, Inc.*, 2015 WL 12591758, at *1 (W.D. Mich. Dec. 17, 2015) ("Because Horizon Bank had not yet been served with the complaint and the motion, this Court could not have granted Trevino's motion for a preliminary injunction prior to the auction. Trevino did not request a temporary restraining order, which could have been issued without notice to the party to be enjoined. *See* Fed. R. Civ. P. 65(b)(1).").

There is a question as to which of the defendants are the adverse party in these motions, or whether all defendants are adverse parties to the motions for injunctive relief.  It would appear that, although Simmons brought the motion against all defendants, the true adverse party is Ross Towing.  This is so because the relief she seeks is directed exclusively at Ross Towing—the return of her vehicle.  Ross Towing has possession of the vehicle.  The other defendants appear to have no stake in what happens to the vehicle and no claim to the vehicle; indeed, as plaintiff avers, the Southfield Police Department provided her with a release of property for the vehicle so that she could recover it from Ross Towing.  The relief she seeks is not connected to the claims against the other parties, claims which

have to do with the investigation into the theft of her vehicle.  Thus, despite her

naming "Defendants" in the motions, it appears that Ross Towing is the adverse

party.

Whether the adverse party is Ross Towing alone, or all the defendants, her

motions are improper because she did not certify attempts at service or explain

why notice of the motion should be dispensed with.  As explained in *Brown v.*

*Countrywide Home Loans*, 2009 WL 1798069, at* 1 (E.D. Mich. June 19, 2009)*,* a

"temporary restraining order is an extraordinary remedy that generally is reserved

for emergent situations in which a party may suffer irreparable harm during the

time required to give notice to the opposite party or where notice itself may

precipitate the harm." *Id.* (citing *Hambell v. Alphagraphics Franchising Inc.,* 779

F.Supp. 910, 912-13 (E.D. Mich. 1991)); *see also Farrell v. Harvey Elam Fair*

*Value Appraisal Servs*., 2011 WL 13220291, at *1 (E.D. Mich. June 3, 2011) ("An

*ex parte* temporary restraining order is an extraordinary measure which will not be

granted unless the movant clearly shows that such relief is warranted.") (quoting

*Schuh v. Mich. Dep't of Corr*., 2010 WL 3648876, at *2 (W.D. Mich. July 26,

2010) (internal citation and quotation marks omitted).  Here, Simmons has not

provided notice to the opposing parties, nor certified in writing "why [notice]

should not be required." Fed.R.Civ.P. 65(b)(l)(B). She filed no certificates of

service with the motions nor has she provided certified reasons, or even discussed,

why she has not served the motion on defendants. Thus, Simmons' failure to provide notice is not reasonable.  "[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). The undersigned, therefore, recommends denying the motion for *ex parte* temporary restraining order on this basis.

Further, neither motion is properly verified pursuant to rule 65(b).  Such a verification must comply with 28 U.S.C. § 1746, which authorizes litigants to provide unsworn declarations in lieu of affidavits under oath, providing in pertinent part that such unsworn declaration or verification be subscribed in writing as true under penalty of perjury, dated, and in substantially the following form: "I declare ( or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *Cruse v. Wayne,* 2014 WL 713001, at *4 (W.D. Mich. Feb. 25, 2014) (quoting 28 U.S.C. § 1746(2)); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that a "verified complaint" is one that is signed under the penalty of perjury pursuant to 28 U.S.C. § 1746). Simmons' first motion contains the following language: "I have read the above motion and it is correct to the best of my knowledge."  (ECF No. 2, PageID.44).

At the end of the second motion, she stated: "I declare that the statements above are true to the best of my information, knowledge, and belief." (ECF No. 15, PageID.111). In neither declaration did she state that she declared under penalty of perjury or otherwise indicated acknowledgment of the importance of providing truthful statements. Because plaintiff has not brought forth a properly verified motion and has not explained the need for emergency injunctive relief without notice to adverse parties, the motions for temporary restraining order should be denied.

Plaintiff's motions for injunctive relief, pursuant to rule 65, should be denied for the added reason that she has not shown entitlement to relief. In determining whether injunctive relief is proper, the court considers four factors: (1) whether plaintiff has a strong likelihood of success on the merits; (2) whether plaintiff has shown irreparable injury; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Tumblebus Inc. v. Cramner*, 399 F.3d 754, 760 (6th Cir. 2005). The same standard applies to a motion for temporary restraining order as to a motion for preliminary injunction. *W. Michigan Family Homes LLC v. United States Dep't of Agric.*, 2013 WL 12109437, at *1 (W.D. Mich. Nov. 26, 2013) (citing *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004)). Although no single factor is

controlling, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal.").

Plaintiff did not address the likelihood of success on the merits in either of her first two motions for injunctive relief. Indeed, she does not mention her claims at all or hint at the standard for injunctive relief under this rule. In the first motion, at docket no. 2, she did not address irreparable harm to herself, harm to others, or the public interest. In her second motion, at docket no. 15, she stated that she "has been irreparably and severely harmed, economically, socially, medically, and physically and placed under stress . . . in having to seek alternative means of transportation to her doctor appointments" due the theft of her vehicle and Ross Towing refusing to release the vehicle to her. (ECF No. 15, PageID.107). She also states that the car registration was due to expire 20 days after the date she filed the motion, and if she renewed the registration after that date, she would incur additional fees. With these statements alone, plaintiff has not met her burden of showing entitlement to an injunction pursuant to Rule 65. Therefore, the motions should be denied.

        b.      Possession Pending Final Judgment

Simmons also seeks possession of her car pending final judgment in this case pursuant to Michigan Court Rule 3.105.  As discussed above, it is not clear that Ross Towing has been properly served in this matter.  Without proper service, the Court does not have personal jurisdiction over this defendant. "In the absence of service of process (or waiver of service of process by the defendant), a court ordinarily may not exercise power over a party that the complaint names as a defendant." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999); *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining that "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant[,]" and "in the absence of personal jurisdiction, a federal court is powerless to proceed to an adjudication." (internal quotation marks and citations omitted)).  This includes issuing injunctive relief against that party (except in the case of a temporary restraining order under Fed. R. Civ. P. 65).  Thus, it does not appear that this Court can grant plaintiff possession pending final judgment, even if she met the standard for such relief.  Thus, the motion should be denied on that basis.[3]

---

[3]     Under the applicable Michigan Court Rule, after the motion for possession pending final judgment is filed, the Court must, if good cause is shown, order the defendant to refrain from damaging the property and to appear before the Court to answer the motion.  M.C.R. 3.105(E)(2).  Though this rule appears to contemplate something akin to a temporary restraining order issued without notice to the adverse party, the rule also contemplates quickly providing notice of the motion and an opportunity to be heard.  But since the Court is not considering Ross Towing to have been properly served, this Court has no personal jurisdiction over it to require it to do anything.  And, as discussed herein, plaintiff has not met her burden for possession.

Additionally, the undersigned concludes that Simmons has not met the standard for possession pending final judgment.  Federal Rule of Civil Procedure 64 allows this Court to grant such a motion under Michigan law.  Pursuant to rule 64,

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought[.]

Michigan provides such a remedy in M.C.R. 3.105(E).

> (E) Possession Pending Final Judgment.
>
> (1) *Motion for Possession Pending Final Judgment.* After the complaint is filed, the plaintiff may file a verified motion requesting possession pending final judgment. The motion must
>
> (a) describe the property to be seized, and
>
> (b) state sufficient facts to show that the property described will be damaged, destroyed, concealed, disposed of, or used so as to substantially impair its value, before final judgment unless the property is taken into custody by court order.

If the plaintiff makes a sufficient showing, the Court would hold a hearing on the motion.  *Id.* at 3.105(E)(3).

The Court need not get to a hearing because Simmons has not established that her car "will be damaged, destroyed, concealed, disposed or, or used so as to substantially impair its value.  M.C.R. 3.105(e)(1)(b) requires a showing that the property *will be* damaged, destroyed, concealed, etc.  Simmons expresses concerns that the car *may be* damaged, destroyed, concealed, etc.  There is insufficient evidence that her car is in imminent danger while sitting in the tow yard at Ross Towing.

In her motions, Simmons argues that her car "may be damaged" because it is not safe sitting outside in the tow yard "exposed to the weather elements with electrical wiring hanging and exposed," and that the car has a cracked windshield which the weather could further damage.  (ECF No. 2, PageID.40).  On inspection of the exterior of the car, plaintiff noticed scratches, a missing sideview mirror, and property in the vehicle that she believes is the thieves' property.  (ECF No. 15, PageID.109).  The damage on the outside of the car was not by her doing.  Though the car has some damage to it, whether by act of the thieves or incurred in the towing process, plaintiff has not shown that the car *will* be damaged, destroyed, concealed, disposed of, or used by Ross Towing in any way that will substantially impair its value.  And, "[m]ere depreciation in value [if any] is not sufficient under the language of MCR 3.105(E)(3)(b)(ii)."  *Vehicle Dev., Corp. PTY, LLD v. Livernois Vehicle Dev., LLC*, 2013 WL 6196965, at *3 (E.D. Mich. Nov. 27, 2013)

(citing Daniel M. Morley, *The Claim and Delivery Action: Recovering the Secured Creditor's Collateral,* Mich. B.J., JULY 1999, at 674, 676) (Observing that "[t]ransfer of possession is not ordinarily granted upon a mere showing that over time, the property will depreciate.")).  To the extent plaintiff believes her car is unsafe in the tow yard because a third party might steal or damage the car, this is only speculative.  She has offered no reason to believe the car is will be stolen or damaged while it sits in the tow yard.  For this additional reason, her motion for possession pending final judgment should be **DENIED**.

       2.     Motion at ECF No. 20

The undersigned addresses this motion separately because it is a motion for preliminary injunction, rather than a motion for a temporary restraining order without notice.  Simmons is adamant that she gave the defendants, including Ross Towing, notice of this motion by mailing it to them.  She mailed the motion to Ross Towing at the 21360 Telegraph Rd. address.  (ECF No. 20, PageID.182).  Although, as established above, the 21360 address is the address for the tow yard, not the building/business office, it is certainly conceivable that a mailing to Ross Towing at the 21360 address would make its way to the business office.  As such, it appears that Ross Towing had notice of this motion.  As with her first two motions for injunctive relief, this motion is a combined motion under Fed. R. Civ.

P. 65 and a motion for possession pending final judgment under the Michigan

Court Rules for claim and delivery.

As discussed above, the Court separately ordered plaintiff to re-attempt

service on the company in light of the conflicting affidavits regarding personal

service on the resident agent and the failure to attempt proper service by mailing.

Without proper service on Ross Towing, the Court lacks personal jurisdiction over

the company.  *See King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining

that "without proper service of process, consent, waiver, or forfeiture, a court may

not exercise personal jurisdiction over a named defendant[,]" and "in the absence

of personal jurisdiction, a federal court is powerless to proceed to an adjudication."

(internal quotation marks and citations omitted)).  Consequently, the undersigned

suggests that the Court cannot grant the injunctive relief plaintiff seeks.  *See*

*Easterling v. Rice*, 2019 WL 1338712, at *1 (S.D. Ohio Mar. 25, 2019); *Erard v.*

*Johnson*, 905 F. Supp. 2d 782, 793 (E.D. Mich. 2012); *Hightower v. Thompson,*

2016 WL 5422061, at *7 (E.D.Ky. Sept. 27, 2016); *R.M.S. Titanic, Inc. v. Haver*,

171 F. 3d 943, 958 (4th Cir. 1999) (preliminary injunction issued against defendant

company was unenforceable because district court did not obtain personal

jurisdiction over company through valid service of process); *Schuh v. Michigan*

*Dep't of Corrections*, 2010 WL 3648876, at *2 (W.D. Mich. July 26, 2010)

("When a preliminary injunction is sought under Rule 65(a), service of the

summons and the complaint is required."); *Carty v. R.I. Dept. of Corrections*, 198 F.R.D. 18, 20 (D.R.I. 2000) ("When an injunction is sought, service of the summons and the complaint is required. It is well settled that without service of process, this Court has no jurisdiction over the named defendants.  Personal jurisdiction is established either by proper service of process, or by the defendant's waiver of any defect in the service of process.").  Similarly, lacking personal jurisdiction over Ross Towing, the Court could not enforce an award to plaintiff of possession of her car pending final judgment in this case.

Accordingly, the undersigned recommends denying her motion for preliminary injunction and for possession pending final judgment without prejudice to her right to re-file the motion after Ross Towing is properly served the summons and complaint.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Ross Towing's motion to set aside entry of default (ECF No. 27) be **GRANTED**.

The undersigned further **RECOMMENDS** that plaintiff's motion for temporary restraining order pursuant to Fed. R. Civ. P. 65 and motions for possession pending final judgment at docket nos. 2 and 15 be **DENIED**.

The undersigned further **RECOMMENDS** that plaintiff's motion for injunctive relief at docket no. 20 be **DENIED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 27, 2020                    s/Michael J. Hluchaniuk
                                           Michael J. Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 27, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Latausha Simmons, 43565 Elizabeth Road, Mt. Clemens, MI  48043.

s/ Durene Worth
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov